UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**WORKWEAR OUTFITTERS, LLC,**

    **Plaintiff,**

v.                                      Case No: 8:23-cv-2580-MSS-AAS

**ADN JEANS GROUP, LLC,**

    **Defendant.**

**<u>ORDER</u>**

    **THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Final Default Judgment. (Dkt. 16) Despite having been served, Defendant ADN Jeans Group, LLC has failed to appear, answer, or otherwise respond to the Complaint, which Plaintiff filed on November 10, 2023. (Dkt. 1) The Clerk entered default on December 18, 2023. (Dkt. 15) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **ORDERS** as follows.

    **I.**     **BACKGROUND**

    Plaintiff Workwear Outfitters, LLC ("Workwear") initiated this action against Defendant ADN Jeans Group, LLC ("ADN") on November 10, 2023 for claims of money had and received, unjust enrichment, and restitution (Count I), and conversion (Count II) under Florida common law. (Dkt. 1) Workwear is a manufacturer and seller of workwear apparel and footwear. (<u>Id.</u> at ¶ 8) ADN is a Tampa-based limited liability company that distributes apparel manufactured by its affiliate. (<u>Id.</u> at ¶ 9) Until

recently, Workwear contracted with ADN to manufacture some of its products. (Id.) According to ADN's written instructions, Workwear directed its payments to ADN to ADN's factoring company, ExpoCredit LLC ("ExpoCredit"), during the period relevant to this case. (Id.; Dkt. 16-1 at 6–7)

In August 2022 and again in January 2023, Workwear made several duplicate payments to ExpoCredit for invoices from ADN that Workwear had already paid. (Dkt. 1 at ¶ 11) Workwear also sent money to ExpoCredit to pay an invoice that was not from ADN. (Id.) The table below summarizes the inadvertent payments. (Id.) In total, Workwear overpaid ADN $945,097.79. (Id.)

| Invoice No. | Invoice Amount | 1st Payment Date | 1st Payment Amount | 2nd Payment Date | 2nd Payment Amount | Amount Overpaid |
|---|---|---|---|---|---|---|
| 182842D | $18,675.35 | 7/15/22 | $18,675.35 | 1/4/23 | $18,675.35 | $18,675.35 |
| 182801D | $22,905.79 | 7/15/22 | $22,905.79 | 1/4/23 | $22,905.79 | $22,905.79 |
| 182804D | $1,508.55 | 7/15/22 | $1,508.55 | 1/4/23 | $1,508.55 | $1,508.55 |
| 182842 | $182,375.15 | 7/15/22 | $182,375.15 | 8/16/22 | $182,375.15 | $182,375.15 |
| 182916 | $143,336.82 | 7/15/22 | $143,336.82 | 8/11/22 | $143,336.82 | $143,336.82 |
| 183353 | $156,989.10 | 8/8/22 | $178,239.04 | 8/25/22 | $156,989.10 | $182,948.71 [4] |
| 183122 | $184,428.39 | 8/822 | $184,428.39 | 8/11/22 | $184,428.39 | $184,428.39 |
| 182354 | $208,919.03 | 8/8/22 | $208,919.03 | | | $208,919.03 |
| | | | | | **Total** | **$945,097.79** |

When Workwear discovered these overpayments in August 2023, Workwear requested ExpoCredit return the money. (Dkt. 1 at ¶ 12) In response, ExpoCredit

2

informed Workwear that ExpoCredit had transferred the money to ADN. (Id.; Dkt. 16 at ¶ 9) ExpoCredit produced wire advices showing that it transferred more than $991,378.07 to ADN after Workwear made the overpayments. (Dkt. 16 at ¶ 9) ExpoCredit also produced evidence that it had applied a portion of the Workwear funds to debts ADN owed to ExpoCredit. (Id.)

In August 2023, ADN delivered two shipments of products to Workwear and invoiced Workwear for $281,412.29. (Dkt. 1 at ¶ 13) Because the outstanding overpayments remained unresolved, Workwear did not pay these invoices. (Id.)

Workwear repeatedly requested that ADN return Workwear's funds. (Id. at ¶¶ 14–16) ADN acknowledged its receipt of the funds but refused to return them. (Id. at ¶ 15) In September 2023, Workwear sent ADN a demand letter in which Workwear requested ADN apply a portion of the overpayments to Workwear's outstanding balance and return the remaining funds. (Id.) ADN has refused to apply Workwear's overpayments to its outstanding balance and has failed to return the remainder of Workwear's funds. (Id.) Consequently, Workwear filed the Complaint on November 10, 2023. (Dkt. 1)

On November 16, 2023, Workwear filed a Return of Service which shows ADN was served with process. (Dkt. 12) To date, ADN has not filed an answer or other responsive pleading in this case. Upon Workwear's Motion for Clerk's Default, (Dkt. 13), the Clerk entered default against ADN on December 18, 2023. (Dkt. 15) Under Federal Rule of Civil Procedure 55, Workwear now seeks entry of a final judgment of

default against ADN as well as an award of damages plus pre- and post-judgment interest. (Dkt. 16)

## II.     LEGAL STANDARD & ANALYSIS

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment if it has jurisdiction over the claims and parties and there is a sufficient basis in the pleadings to support the relief sought. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[1] Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In defaulting, a defendant admits the plaintiff's well-pled allegations of fact. Id. at 1245. But "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., 515 F.2d at 1206.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543–44 (11th Cir. 1985). Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or the submission of detailed affidavits establishing the necessary facts. See id. at 1544.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

### a. Jurisdiction

First, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2), which confers jurisdiction for suits between citizens of different states where the amount in controversy exceeds $75,000. Workwear establishes it is a citizen of the District of Columbia, Florida, Georgia, Maryland, and Pennsylvania for purposes of diversity jurisdiction. (Dkt. 16 at ¶ 5) ADN, on the other hand, is a citizen of Mexico. (Id. at ¶ 6) The amount in controversy here exceeds $75,000. Thus, the Court has subject matter jurisdiction over this case under § 1332(a)(2). Also, the Court has personal jurisdiction over ADN because it maintains its principal place of business in Tampa, Florida. (Id. at ¶ 7) Thus, the Court finds it has jurisdiction over the claims and the parties.

### b. Liability

Workwear sets forth a valid cause of action against ADN for unjust enrichment and restitution.[2] Florida courts recognize a cause of action for unjust enrichment "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013) (citation and internal quotation omitted). Unjust enrichment exists where: "(1) a benefit is conferred on defendant with plaintiff's knowledge of the benefit;

---

[2] "Under Florida law, 'money had and received' is synonymous with unjust enrichment and restitution." Pincus v. Am. Traffic Sols., Inc., 986 F.3d 1305, 1317 n.13 (11th Cir. 2021) (citation omitted).

5

(2) that defendant voluntarily accepted and retained such benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to plaintiff." Sea-Land Serv., Inc. v. Sellan, 64 F. Supp. 2d 1255, 1263 (S.D. Fla. 1999). For example, the cause of action lies where a plaintiff seeks to recover money paid under a mistake of fact. See Equilease Corp. v. Hentz, 634 F.2d 850, 853 (5th Cir. 1981).[3]

In the Complaint, Workwear alleges sufficient facts to establish ADN was unjustly enriched by Workwear's inadvertent payments. Workwear made overpayments of $945,097.79 to ExpoCredit. (Dkt. 1 at ¶ 11) ExpoCredit transferred $902,008.10 of those funds to ADN and applied $43,089.69 of those funds to debts ADN owed to ExpoCredit. (Id. at ¶ 12; Dkt. 16 at ¶ 9) Workwear authorized and directed ADN to apply $281,412.29 of its overpayments to Workwear's outstanding invoices. (Dkt. 1 at ¶ 15) Consequently, ADN still holds $663,685.50 that belongs to Workwear. The attachments to Workwear's Motion support these allegations. (Dkt. 16-1 at 31–44; Dkt. 16-2) By failing to defend against the Complaint, ADN is deemed to have admitted the well-pled factual allegations against it. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). Thus, the Court finds Workwear is entitled to default judgment against ADN on its claim of unjust enrichment and restitution.

---

[3] See Bonner, 661 F.2d at 1207 (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

However, Workwear fails to state a claim for conversion under Florida law against ADN. "Under Florida law, conversion is an unauthorized act which deprives another of his property permanently or for an indefinite period of time." Longo v. Campus Advantage, Inc., 588 F. Supp. 3d 1286, 1298 (M.D. Fla. 2022) (citation and internal quotation omitted). "In Florida, the conversion of money is treated differently than traditional conversion." Id. (citation and internal quotation omitted). The elements of conversion of money are: "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." IberiaBank v. Coconut 41, LLC, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013) (quotation omitted). "The first element—specific and identifiable money—requires that the money is deposited into an account designed to keep the money segregated and identifiable, such as a trust or escrow account, or where there is an obligation or fiduciary duty to keep money segregated." Longo, 588 F. Supp. 3d at 1298–99 (citation and internal quotation omitted) (dismissing the plaintiffs' conversion claim where they made "no allegations . . . that [the defendant] kept the money Plaintiffs paid to it . . . separate, such as in a trust or an escrow account, or that [the defendant] had any 'obligation' to do so").

Here, Workwear does not allege ADN kept the funds or was directed to keep the funds it received from Workwear through ExpoCredit separate, such as in a trust or an escrow account. Likewise, Workwear makes no allegations to support a finding

7

that ADN had an obligation to keep the funds separate. For this reason, Workwear's conversion claim fails.

### c. Damages

Workwear seeks an award of damages based on its unjust enrichment claim. Under Rule 55 of the Federal Rules of Civil Procedure, the Court may award Workwear damages without a hearing if Workwear's claim is "for a sum certain that can be made certain by computation." In support of its claim for damages, Workwear submits true and correct copies of the invoices it overpaid, (Dkt. 16-1 at 8–30), the transaction details from its bank statements to evidence the payments, (Dkt. 16-1 at 31–39), ExpoCredit's wire advices from transferring funds to ADN, (Dkt. 16-2), and Workwear's demand letter to ADN. (Dkt. 16-1 at 40–44) Workwear also submits the declarations of David Green, Workwear's General Counsel, (Dkt. 16-1 at 1–4), and Elvia Catalina Pelaez Velez, ExpoCredit's Managing Director of Sales. (Dkt. 16-2)

Workwear has established that it made inadvertent overpayments totaling $945,097.79. In August 2023, before Workwear discovered the overpayments, Workwear received invoices from ADN totaling $281,412.29. Workwear instructed ADN apply a portion of the overpayments to these outstanding invoices. ADN has failed to acknowledge the application of Workwear's overpayments to its outstanding balance, and it has failed to return the remaining funds. Accordingly, ADN is liable for a sum certain of $663,685.50 and no hearing is required.

Workwear is entitled to pre- and post-judgment interest on its unjust enrichment claim. "Florida law is clear that a plaintiff is entitled to prejudgment interest on an

unjust enrichment claim," TracFone Wireless, Inc. v. Hernandez, 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016), which accrues from the date the defendant was unjustly enriched. IberiaBank, 984 F. Supp. 2d at 1299, aff'd, 589 F. App'x 479 (11th Cir. 2014).[4] In the absence of a contractual agreement, pre-judgment interest accrues at the rate specified in § 55.03, Florida Statutes. WPB, Ltd. v. Supran, 720 So.2d 1091, 1093 (Fla. 4th DCA 1998). The applicable rate is the rate effective at the time of loss or entitlement. Genser v. Reef Condo. Ass'n, Inc., 100 So.3d 760, 762 (Fla. 4th DCA 2012). The rate is fixed as of the date of loss, and the "rate carries through the entire pre-judgment period until entry of judgment regardless of periodic rate changes for later-accrued losses in other cases." Devengoechea v. Bolivarian Rep. of Venezuela, No. 12-cv-23743, 2023 WL 9184570, at *7 (S.D. Fla. Dec. 4, 2023) (citing Regions Bank v. Maroone Chevrolet LLC, 118 So. 3d 251, 258 (Fla. 3d DCA 2013)).

In the Complaint and the Motion, Workwear establishes the dates of loss for each of the inadvertent payments: (1) on August 8, 2022, Workwear made two overpayments totaling $234,878.64;[5] (2) on August 11, 2022, Workwear made two overpayments totaling $327,765.21; (3) on August 16, 2022, Workwear made one overpayment totaling $182,375.15; (4) on August 25, 2022, Workwear made one overpayment totaling $156,989.10; (5) on January 4, 2023, Workwear made three

---

[4] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.
[5] Dkt. 1 at ¶ 11 n.4.

9

overpayments totaling $43,089.69; and (6) on September 22, 2023, Workwear instructed ADN to apply a portion of these overpayments to Workwear's outstanding invoices totaling $281,412.29, thus reducing Workwear's total claim by this amount.

The statutory rate of interest at the time Workwear made its August 2022 overpayments was 4.34%. This rate of interest carries through the entire pre-judgment period. Devengoechea, 2023 WL 9184570, at *7. Accordingly, each of the overpayments Workwear made in August 2022 accrued interest at 4.34% from the date of the overpayment until September 22, 2023, when Workwear's total claim was reduced by value of Workwear's outstanding invoices from August 2023. For example, the overpayment made on August 8, 2022 accrued $11,450.49 between the date of loss and September 22, 2023 (*i.e.*, 4.34% per year for 410 days). As for the overpayments Workwear made in January 2023, the statutory rate of interest was 5.52%. These overpayments accrued interest at 5.52% from the date of overpayment until September 22, 2023. Consequently, Workwear's overpayments accrued interest as follows:

| Date of Loss | Principal Claim Amount | Statutory Rate of Interest | Days Between Date of Loss & September 22, 2023 | Interest Accrued | Claim Amount as of September 22, 2023 |
|---|---|---|---|---|---|
| August 8, 2022 | $234,878.64 | 4.34% | 410 | $11,450.49 | $246,329.13 |
| August 11, 2022 | $327,765.21 | 4.34% | 407 | $15,861.86 | $343,627.07 |
| August 16, | $182,375.15 | 4.34% | 402 | $8,717.43 | $191,092.58 |

| | | | | | |
|---|---|---|---|---|---|
| 2022 | | | | | |
| August 25, 2022 | $156,989.10 | 4.34% | 393 | $7,335.99 | $164,325.09 |
| January 4, 2023 | $43,089.69 | 5.52% | 261 | $1,700.83 | $44,790.52 |
| Total | $945,097.79 | | | $45,066.60 | $990,164.39 |

On September 22, 2023, Workwear reduced its total claim against ADN, then equal to $990,164.39, by $281,412.29. Thus, Workwear's new total claim is $708,752.10. To appropriately calculate the pre-judgment interest for the new total claim, which consists of payments accruing interest at two different rates, the Court finds the pro rata share of the new total claim attributable to overpayments with dates of loss in August 2022 (and, therefore, an interest rate of 4.34%), and the pro rata share attributable to overpayments with a January 2023 date of loss (accruing 5.52% interest).

| Date of Loss | Claim Amount as of September 22, 2023 | Share of Total Claim | Pro Rata Amount of New Claim |
|---|---|---|---|
| August 2022 | $945,373.87 | 95% | $676,691.39 |
| January 4, 2023 | $44,790.52 | 5% | $32,060.71 |
| Total | $945,097.79 | 100% | $708,752.10 |

These values have accrued interest from September 22, 2023 until the date of this Order

11

as follows:

| Date of Loss | Principal Claim Amount | Statutory Rate of Interest | Days Between September 22, 2023 & this Order | Interest Accrued | Claim Amount as of this Order |
|---|---|---|---|---|---|
| August 2022 | $676,691.39 | 4.34% | 250 | $20,115.35 | $696,806.74 |
| January 2023 | $32,060.71 | 5.52% | | $1,212.16 | $33,272.87 |
| Total | $708,752.10 | | | $21,327.51 | $730,079.61 |

The total pre-judgment interest accrued is $66,394.11.

Workwear is also entitled to recover post-judgment interest under 28 U.S.C. § 1961(a)(b). Post-judgment interest shall be calculated from the date of this Order "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id. Such interest "shall be computed daily to the date of payment . . . , and shall be compounded annually." Id.

### III. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Default Final Judgment, (Dkt. 16), is **GRANTED IN PART and DENIED IN PART**.

2. Plaintiff is entitled to recover $663,685.50 in damages from Defendant.

12

3. Plaintiff is entitled to recover $66,394.11 in pre-judgment interest from Defendant.

4. Interest from the date this action was filed shall accrue at the legal rate. <u>See</u> 28 U.S.C. § 1961.

5. The **CLERK** is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 29th day of May 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any pro se party